969 A.2d 305

## BOARD OF EDUCATION OF WORCESTER COUNTY

v.

## HORACE MANN INSURANCE COMPANY.

**No. 90, Sept. Term, 2008.**

Court of Appeals of Maryland.

April 10, 2009.

Thomas V. McCarron (Semmes, Bowen & Semmes, Baltimore), on brief, for appellant.

Amy Lette Leone (Charles E. Wilson, III of McCarthy Wilson, Rockville), on brief, for appellee.

Argued before BELL, C.J. HARRELL, BATTAGLIA, GREENE, MURPHY, ADKINS and BARBERA, JJ.

GREENE, J.

In August of 2005, Pocomoke High School student Bradley Souders ("Souders") brought a civil action in the Circuit Court for Worcester County,[1] alleging that Vice Principal, James L. Covington ("Mr. Covington"), had assaulted him. The issue presented for our review is whether the Board of Education of Worcester County ("the Board") had a duty to provide Covington with a defense in this action pursuant to Md. Code (1978, 2004 Repl. Vol.), § § 4–104 and 4–105 of the Education Article. We shall hold that § 4–104 of the Education Article required the Board to provide Covington with a defense because the allegations of the complaint, and extrinsic evidence brought to the Board's attention, established the potentiality that Covington's actions were taken within the performance of his duties, within the scope of his employment and without malice.

## I. Background

The parties agree that Mr. Covington summoned Souders to his office because Souders had been accused of harassing another student. While Souders was in Covington's office, the events that gave rise to Souders' complaint occurred. In his complaint, Souders described the events as follows:

On March 17, 2004, [Mr. Covington] summoned [Souders] to his office, closed the door, removed the cord from the handset of the telephone, and in the course of subsequent

---

1. The complaint was filed through Tracy L. Souders, Souders' Mother and next friend.

conversation, removed from the bottom drawer of his desk, a knife with a six to seven inch blade and brandished it directly in front of [Souders], hereby [sic] placing [Souders] in fear of imminent harm.

Souders' complaint also alleged:

That because of the student-vice principal relationship between the parties, giving [Mr. Covington] control over [Souders], because they were alone in [Mr. Covington's] office, because [Mr. Covington] remove [sic] the cord from the handset of his telephone, and because [Mr. Covington] brandished the knife, [Souders] was caused to suffer and continue to suffer mental pain, suffering fright [sic], nervousness, indignity, humiliation, embarrassment, and other damages.

Mr. Covington's version of the events differed significantly. In response to Souders' complaint, Mr. Covington indicated that his duties as Vice Principal required him to address disciplinary issues and that he called Souders to his office to address a potential disciplinary problem. When Souders arrived in Mr. Covington's office, according to Mr. Covington, he engaged in a discussion with Souders regarding "where harassment could lead." Mr. Covington stated that during the course of this discussion, he showed Souders a knife that he had confiscated from a former student who was small and often teased at school. Mr. Covington asserted that he then asked Souders "how he would feel if someone that he had picked on had brought the knife to school." [2]

Mr. Covington denied assaulting Souders and indicated that he believed his actions were appropriate and pursuant to his duties as Vice Principal. Accordingly, Mr. Covington asked the Board to provide him with a defense in the assault action pursuant to Md. Code (1978, 2004 Repl. Vol.), § 4–104(d) of

---

2. Souders' Responses to Interrogatories also corroborated that Covington showed him the knife in the context of telling Souders a story about a smaller child who had brought the weapon to school because he was often "picked on" or teased.

the Education Article.[3]  The Board refused to defend Coving-
ton because he was charged with assault, an intentional tort.
The Board contended that assault could never be without
malice, and thus, did not fall within the purview of § 4–104(d)
of the Education Article.

The Board self-insures through the Maryland Association of
Boards of Education Group Insurance Pool ("the Pool").  As a
member of the Pool, the Board is covered under the Pool's
self-insurance agreement.  The Pool also refused to provide
Covington with a defense, asserting that the actions alleged in
Souders' complaint were not covered under the self-insurance
agreement because the agreement excludes coverage for in-
tentional acts.  The Pool further asserted that Souders' com-
plaint alleged a type of damage, emotional distress, that was
not covered under its policy.

Ultimately, Horace Mann Insurance Company ("Horace
Mann") provided Mr. Covington with a defense pursuant to an
Educators Employment Liability Policy that it had issued to
the Maryland State Teachers Association.[4]  The case was
tried before a jury and the jury found Mr. Covington did not
assault Souders.  Subsequently, Horace Mann filed an action
for declaratory judgment in the Circuit Court for Worcester
County, seeking a declaration that: (1) the Board had a duty
to defend Covington against the allegations in the underlying
action, (2) the Board breached its duty by refusing to provide

---

3.  Md. Code (1978, 2004 Repl. Vol.), § 4–104(d)(1) of the Education
Article provides:

(d) *Counsel to be provided in suits against teachers and other board
agents and employees.*—(1)  In any suit or claim brought against a
principal, teacher, school security guard, or other agent or employee
of a county board by a parent or other claimant with respect to an
action taken by the agent or employee, the board shall provide for
counsel for that individual if:

(i) The action was taken in the performance of his duties, within
the scope of his employment and without malice;  and

(ii) The board determines that he was acting within his authorized
official capacity in the incident.

4.  Mr. Covington is a member of the Maryland State Teachers Associa-
tion.

Covington with such defense, and (3) the Board was obligated to reimburse Horace Mann for the expense of defending Covington in the underlying action and for the expense of bringing the declaratory judgment action.

The Circuit Court for Worcester County determined that if the Board had a duty to defend Covington, that duty either arose out of the Pool's self-insurance agreement or § 4–104(d) of the Education Article. The court then concluded that Souders' complaint and Covington's defense did not allege facts that invoked a potentiality of coverage under the terms of the Pool's self-insurance agreement and thus, the Pool owed no duty to defend Covington under that policy. The court analyzed the Pool's policy as follows:

> There are two potential scopes of coverage applicable to this situation. The "Legal Liability Scope" specifically disclaims responsibility for any assault case, no matter how frivolous. The "Casualty Scope" is limited to payments for "bodily injury" and requires an "occurrence." An "occurrence" is defined as an accident or a professional incident. The underlying complaint, and Mr. Covington's defense, do not allege there was an accident and the term "professional incident" applies to medical services.

Next, the court held that the Board was required to provide Covington with a defense pursuant to § 4–104(d) of the Education Article. Analogizing the case to *Aetna v. Cochran,* 337 Md. 98, 651 A.2d 859 (1995), the Court reasoned:

> Mr. Covington was entitled to a defense when he was acting in the "scope of his employment" and "without malice." Like self-defense, acting in the scope of his employment is not something that would be pled in a complaint if the plaintiff were seeking recovery solely against Mr. Covington. That defense serves to disprove the intent element necessary in an assault case and, if proved, would mean that Mr. Covington met all the criteria of 4–104(d).

> \* \* \* \*

> [A] legitimate defense that raises a potentiality of coverage must be considered. Mr. Covington raised a credible

defense that was covered by 4–401(d), so credible in fact that he won his case. The Defendants were obligated to provide a defense and they are obligated to compensate Horace Mann for the cost of the defense they provided.

The Board noted a timely appeal to the Court of Special Appeals, but before that court could consider the case, we issued a writ of certiorari on our own initiative, *Board of Educ. v. Horace Mann*, 406 Md. 192, 957 A.2d 999 (2008).[5]

## II.  DISCUSSION

The Board asserts that the Circuit Court for Worcester County misapplied the Education Article and established precedent.  Specifically, the Board contends that the trial court's holding that "a county board of education has a duty to defend one of its employees pursuant to the Education Article, § 4–104, even where the only claim asserted against the employee was an intentional assault, effectively imposes upon county school boards an absolute duty to defend virtually *any* claim against a board employee."  The Board also urges that the holding below breaks the chain that exists between §§ 4–104 and 4–105 of the Education Article [6] in contradiction to this

5.  The question presented for review is:  "Whether, under § § 4–104 and 4–105 of the Education Article, a county school board is required to defend a school employee in an underlying tort action even where the only cause of action alleged was an intentional tort."

6.  Md. Code (1978, 2004 Repl. Vol.), § 4–105 of the Education Article provides:
(a) *Comprehensive liability insurance.*—Each county board shall carry comprehensive liability insurance to protect the board and its agents and employees.  The purchase of this insurance is a valid educational expense.
(b) *Standards for policies; coverage.*—The State Board shall establish standards for these insurance policies, including a minimum liability coverage of not less than $100,000 for each occurrence.  The policies purchased under this section shall meet these standards.
(c) *Self-insurance; minimum coverage.*—(1)  A county board complies with this section if it:
(i) Is individually self-insured for at least $100,000 for each occurrence under the rules and regulations adopted by the State Insurance Commissioner; or

Court's holding in *Board of Ed. v. Horace Mann Insurance,* 383 Md. 527, 860 A.2d 909 (2004). The Board explains:

[T]he Board in this instance did procure the coverage required under § 4–105, coverage which, as the trial court itself held and which Horace Mann does not challenge on appeal, provided no duty to defend a single count of intentional assault. The trial court's holding, therefore, or at least its effect, is to break the very relationship between §§ 4–104 and 4–105 that the Court of Appeals recognized exists in *[Mann Insurance],* 383 Md. 527, 860 A.2d 909. Simply put, the Circuit Court in this case found a duty to defend under § 4–104 that would not exist under the likely terms of insurance that the Board was required to procure under § 4–105.

Conversely, Horace Mann argues that the trial court correctly held that under § 4–104(d) of the Education Article, the Board was required to provide Mr. Covington with a defense, because there was a potentiality that Mr. Covington's conduct was performed pursuant to his duties as Vice Principal, within the scope of his employment, and without malice. Horace Mann asserts that the Board is required to defend employees for acts performed within the scope of the employee's employment and without malice, not simply for damages arising out of an occurrence as that term is typically used in liability policies. According to Horace Mann, § 4–104(d) of the Education Article is to be "liberally construed to effectuate its beneficent purpose because it is remedial legislation enacted for the benefit of school board employees."

We shall hold that the Board had a duty to defend Covington under § 4–104 of the Education Article because the evidence presented established the potentiality that Covington's conduct was undertaken in the performance of his duties as Vice Principal, was within the scope of his employment, and was without malice. To begin our analysis, we point out that

---

(ii) Pools with other public entities for the purpose of self-insuring property or casualty risks under Title 19, Subtitle 6 of the Insurance Article.

the trial court correctly noted that the Pool's self-insurance policy provided no potentiality of coverage for the conduct alleged in this case. As the court noted, the Pool's self-insurance policy contains two parts: the "Legal Liability Scope of Coverage" and the "Casualty Scope of Coverage." The "Legal Liability Scope of Coverage" expressly indicates that the Pool will not make any payment or defend any claim that arises out of an "actual or alleged" assault. The "Casualty Scope of Coverage" indicates that the Pool will only provide coverage for claims arising out of "occurrences," i.e., accidents or repeated exposure to a harmful condition, or "professional incidents," defined to mean medical or professional care. Because there was no potentiality of coverage under the terms of the policy, the Pool had no duty to provide Covington with a defense under the policy as written.

Notwithstanding the above conclusions, we expressly reject the Board's argument that it had no duty to provide Covington with a defense under § 4–104(d) of the Education Article because the terms of the self-insurance policy it procured excluded the alleged conduct from coverage. A board's duty to provide an educator [7] with a defense under § 4–104 of the Education Article is independent of its duty to procure insurance to protect itself, its agents and employees pursuant to § 4–105 of the Education Article. *Mann Insurance*, 383 Md. at 532, 860 A.2d at 912.

In *Mann Insurance*, we explained that while the duties contained in § § 4–104 and 4–105 of the Education Article are independent duties, they are also in some ways interrelated. *Mann Insurance*, 383 Md. at 544, 860 A.2d at 919. In that case we concluded that the duty to defend that is explicit in § 4–104 of the Education Article is implicit in § 4–105 of the Education Article. *Mann Insurance*, 383 Md. at 544–45, 860 A.2d at 919. Accordingly, we held that an educator is entitled to a defense under the terms of a self-insurance agreement procured pursuant to § 4–105 of the Education Article if: 1)

---

7. We use the term "educator" throughout the Opinion to refer to agents or employees of a county board of education.

there is a potentiality that the employee was acting within the scope of employment, pursuant to duty and without malice, and 2) that potentiality brings the employees' acts or omissions within the policy's scope of coverage.[8] We did *not* hold in *Mann Insurance* that a school board's duty to defend an educator as mandated by § 4–104 of the Education Article is in any way limited by the type of insurance coverage or self-insurance policy that a board procures pursuant to § 4–105 of the Education Article. In fact, our decision in *Mann Insurance* made clear that there is only one test for determining whether an educator is entitled to a defense under § 4–104 of the Education Article. 383 Md. at 545, 860 A.2d at 919–20. To pass that test an educator need only establish "a potentiality that the conduct at issue was undertaken in the performance of the [educator's] duties, was within the scope of employment and was without malice." *Id.*

To determine if there is a potentiality that the educator's alleged conduct meets the requirements of the above test, the Court looks to the allegations of the complaint and to any relevant extrinsic evidence provided by the insured. *Mann Insurance*, 383 Md. at 545, 860 A.2d at 920; *see also Cochran*, 337 Md. at 110–11, 651 A.2d at 866 (holding that an insured may establish a potentiality of coverage under an insurance policy through the use of extrinsic evidence). We have said that, "at least where the underlying complaint in the tort action neither conclusively establishes nor conclusively negates

8. Thus, under our holding in *Mann Insurance*, 383 Md. 527, 860 A.2d 909 (2004), an educator who is accused of the intentional tort of assault is entitled to a defense under a self-insurance agreement that excludes coverage for intentional torts if the complaint and extrinsic evidence provided in the case establish the potentiality that the educator was acting in way that would entitle him or her to a defense under § 4–104 of the Educational Article. An educator is entitled to a defense under that Article if the educator establishes the potentiality that he or she was acting pursuant to his or her duties, within the scope of his or her employment, and without malice at the time the alleged misconduct occurred. *Mann Insurance*, 383 Md. at 545, 860 A.2d at 919. Mr. Covington is not entitled to a defense under the self-insurance agreement in this case because, amongst other things, the agreement expressly excludes coverage for assault and *allegations* of assault.

a potentiality of coverage, an insurer must examine any relevant extrinsic evidence brought to its attention that might establish a potentiality of coverage." *Mann Insurance*, 383 Md. at 538, 860 A.2d at 915 (summarizing our holding in *Cochran*, 337 Md. 98, 651 A.2d 859); *see also Cowan Sys. v. Harleysville Mut. Ins. Co.*, 457 F.3d 368, 372 (4th Cir.2006) (explaining that under Maryland law, any "doubts about the potentiality of coverage must be resolved in favor of the insured"). In this case, Mr. Covington's response to the allegations contained in Souders' complaint, and the documents produced in discovery, established the potentiality that Mr. Covington was acting pursuant to his duties, within the scope of his employment and without malice at the time the alleged assault occurred. The evidence in this case indicates that Mr. Covington was required to address disciplinary matters pursuant to his duties as Vice Principal of Pocomoke High School. It further indicates that Mr. Covington called Souders to his office to resolve a potential disciplinary issue and that while Souders was in Mr. Covington's office, Mr. Covington showed him a knife during the context of a discussion about the negative impacts of peer to peer harassment. Based on this evidence, a trier of fact could reasonably find that Mr. Covington did not engage in unlawful or malicious behavior. As such, the Board owed Mr. Covington a defense under § 4–104 of the Education Article. Because the Board refused to provide Mr. Covington with such a defense, the Board is required to reimburse Horace Mann for the sums that it expended in providing Mr. Covington with a defense in the assault action and for the sums that it expended in prosecuting the declaratory judgment action.

**JUDGMENT OF THE CIRCUIT COURT FOR WORCESTER COUNTY AFFIRMED. APPELLANT TO PAY COSTS.**